**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 5 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOHN R. WILSON; JACQUELINE
WILSON, a Married Couple,

Plaintiffs - Appellants,

v.

JPMORGAN CHASE BANK, N.A.;
QUALITY LOAN SERVICE
CORPORATION OF WASHINGTON,

Defendants - Appellees.

No. 24-6897

D.C. No. 2:23-cv-01827-JHC

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
John H. Chun, District Judge, Presiding

Submitted January 30, 2026[**]
San Francisco, California

Before: SCHROEDER, FRIEDLAND, and COLLINS, Circuit Judges.

Pro se Plaintiffs John and Jacqueline Wilson ("the Wilsons") have filed this

appeal challenging (1) the district court's partial rejection of their appeal of a

summary judgment order entered by the bankruptcy court; and (2) the district

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

court's subsequent order denying the Wilsons' motion for reconsideration. Because we lack jurisdiction, we dismiss this appeal.

**I**

On April 22, 2005, the Wilsons obtained a $567,000 refinance loan from Washington Mutual Bank on a property located in Snohomish, Washington. The Wilsons executed a promissory note, secured by a deed of trust, which was subsequently acquired by JPMorgan Chase Bank ("Chase"). Around January 2011, the Wilsons stopped making their loan payments. In October 2012, Chase appointed Quality Loan Services Corporation ("Quality") as successor trustee, and Quality issued a notice of default and sought a nonjudicial foreclosure.

Subsequently, two separate proceedings ensued. The first was a bankruptcy proceeding in which the Wilsons filed a Chapter 13 petition for bankruptcy to which Chase and the Chapter 13 Trustee objected. Chase filed a proof of claim to participate in the bankruptcy process, and the Trustee filed a motion to dismiss. The Wilsons objected to Chase's proof of claim, arguing that (1) Quality was not a qualified successor trustee and (2) the statute of limitations had run on Wilsons' promissory note and deed of trust. On November 3, 2023, over the Wilsons' objections, the bankruptcy court issued an order allowing Chase's proof of claim ("the Claim Order"). On November 27, 2023, the bankruptcy court issued an order continuing the Trustee's motion to dismiss and ordering the Wilsons to make a

payment of $104,923 by December 15, 2023 ("the Continuance Order"). Upon the Wilsons' failure to make the payment, the bankruptcy court dismissed the bankruptcy proceeding. The Wilsons filed a motion for reconsideration, which was denied. The Wilsons appealed to the district court, challenging the Claim Order, the Continuance Order, the order to dismiss the bankruptcy proceeding, and the order denying reconsideration.

The second proceeding was an adversary proceeding in which the Wilsons sued Chase and Quality (collectively "Defendants") in Snohomish County Superior Court seeking damages and injunctive and declaratory relief. As construed by the district court, their operative pro se adversary complaint alleges that (1) the Washington Deed of Trust Act ("DTA") violates both the Washington Constitution and the United States Constitution by impairing the Wilsons' contractual rights; (2) Defendants violated the Washington Consumer Protection Act ("CPA") by attempting to collect time-barred debt and failing to appoint a qualified successor trustee; and (3) "the nonjudicial foreclosure at issue in this litigation is void." The case was removed to the district court in May 2023. Chase subsequently moved to dismiss the Wilsons' complaint, and Quality joined the motion. The matter was ultimately transferred to the bankruptcy court.

On December 18, 2023, the bankruptcy court granted in part and denied in part the Defendants' motion to dismiss the adversary complaint ("the MTD

3

Order"). Specifically, the bankruptcy court dismissed without leave to amend the Wilsons' claims for declaratory judgment that the DTA violated the Washington and United States Constitutions and that the nonjudicial foreclosure proceeding is void. The bankruptcy court, however, denied the motion to dismiss with respect to Wilsons' CPA claim, which was predicated on allegations that the statute of limitations had run on the Wilsons' debt and that Quality was not an authorized trustee. The Wilsons filed a motion for reconsideration, which was denied. The Wilsons timely appealed the bankruptcy court's MTD Order to the district court.

On January 22, 2024, Chase filed a motion for summary judgment with respect to the remaining CPA claim. On April 30, 2024, the bankruptcy court, after holding a hearing, granted Chase summary judgment ("MSJ Order"). The bankruptcy court held the Wilsons' CPA claim was barred by the issue-preclusive effect of the Claim Order and that, in any event, the claim lacked merit. The bankruptcy court also rejected the Wilsons' argument "that their obligation to repay the full loan was suspended," holding that the Wilsons had not raised this claim earlier in the proceeding, and that, even if they had done so, the claim was without merit. The Wilsons filed a motion for reconsideration of the summary judgment order, which was denied. The Wilsons timely appealed the bankruptcy court's MSJ Order to the district court.

On September 26, 2024, in a consolidated order addressing the Wilsons'

4

various appeals, the district court affirmed in part and vacated and remanded in part the bankruptcy court's various orders across both the bankruptcy proceeding and the adversary proceeding. As relevant here, the district court vacated the Claim Order and likewise vacated the portions of the MSJ Order that relied on the Claim Order. The district court also vacated the grant of summary judgment on the CPA claim and remanded for further consideration on the merits. The district court also held that the bankruptcy court did not err in holding that the Wilsons could not raise for the first time at summary judgment a new claim that their obligation to repay the full loan was suspended.

On October 26, 2024, 30 days after the district court's September 26, 2024 order, the Wilsons filed an untimely motion for reconsideration under Rule 60(b)(6) only with respect to the Wilsons' suspension-of-obligation argument. In the motion, the Wilsons provided a detailed account as to why they could not have raised this argument earlier in the litigation. On October 28, 2024, after noting that the motion was untimely under Local Civil Rule 7(h), the district court denied the Wilsons' motion for failing to present the arguments asserted in the motion for reconsideration in their opening brief to the district court.

On November 4, 2024, the Wilsons filed their notice of appeal, challenging (1) the unfavorable portions of the district court's September 26, 2024 order; and (2) the district court's October 28, 2024 order denying reconsideration.

In their opening brief in this court, the Wilsons challenge *only* the district court's rulings upholding the bankruptcy court's decision rejecting their claim that the obligation to pay the note in full was suspended. According to the Wilsons, "[t]he obligation to repay the Loan in full in one payment on Chase's demand . . . continued to be suspended because a note can be dishonored only after it matures," and the note here did not mature because "Chase admits it never accelerated the Note." This issue was resolved in the portion of the district court's September 26, 2024 order addressing the bankruptcy court's grant of summary judgment in the adversary proceeding. We first address whether we have jurisdiction to review that ruling.

This court has "authority to hear appeals in bankruptcy cases under three different jurisdiction-conferring provisions, 28 U.S.C. §§ 1291, 1292, and 158(d)(1)." *Gugliuzza v. FTC* (*In re Gugliuzza*), 852 F.3d 884, 889 (9th Cir. 2017). Here, as in *Gugliuzza*, "[w]e have no difficulty concluding that we lack jurisdiction under §§ 1291 and 1292." *Id*. at 898. "We do not have jurisdiction under § 1291 because the district court's [September 26, 2024] order did not end the litigation on the merits and leave nothing for the district court to do but execute the judgment." *Id*. (simplified). On the contrary, that order remanded multiple issues for the bankruptcy court to address. "We also lack jurisdiction under § 1292

because the district court did not certify its decision for interlocutory review." *Id*. The question, then, is whether we have jurisdiction under § 158(d), which is what typically controls our jurisdiction over district court orders reviewing bankruptcy court rulings. *See York v. IRS* (*In re York*), 78 F.4th 1074, 1082–83 (9th Cir. 2023).

As relevant here, § 158(a) provides that district courts shall have jurisdiction "'to hear appeals . . . from *final* judgments, orders, and decrees' *of the bankruptcy courts*." *York*, 78 F.4th at 1082–83 (emphasis altered) (quoting 28 U.S.C. § 158(a)). "Section 158(d)(1), in turn, grants the courts of appeals jurisdiction over 'appeals from all *final* decisions, judgments, orders, and decrees' *entered by district courts* under § 158(a)." *Id.* at 1083 (emphasis added). The standards for judging finality "are different in [the] bankruptcy" context. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015). Because a "bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor," "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Id.* (citations omitted).

Of particular relevance here, "we have held that a bankruptcy court judgment 'dispos[ing] of all claims raised in [an] adversary complaint' is sufficiently 'final' for purposes of §§ 158(a)(1) and (d)(1) and that an 'appeal from

the district court's *affirmance* thereof [is] from a final judgment for jurisdictional purposes.'" *York*, 78 F.4th at 1083 (emphasis added) (quoting *Caneva v. Sun Cmtys. Operating Ltd. P'ship* (*In re Caneva*), 550 F.3d 755, 759 n.1 (9th Cir. 2008)). "That conclusion makes sense because, had the adversary complaint been filed as a stand-alone lawsuit, a judgment disposing of all of the claims in that suit would be considered final under the standards of 28 U.S.C. § 1291." *Id.* (simplified). Here, the bankruptcy court's MSJ Order disposed of all of the claims in the adversary complaint, and the district court therefore had jurisdiction over that ruling under § 158(a)(1). Unlike in *Caneva*, however, the district court here did not affirm that order but instead vacated it in part and remanded for further proceedings concerning the Wilsons' CPA claim and issues related to "whether Quality was a qualified successor trustee." In doing so, the *district court's* challenged order concerning summary judgment—which is what controls our jurisdiction under § 158(d)(1)—did not end the adversary action, nor did it "fix the rights and obligations" of any party. *Gugliuzza*, 852 F.3d at 898. Moreover, because the district court's order remanded key issues concerning claims in the adversary proceeding, it would be inefficient to engage in piecemeal review of a particular sub-issue resolved in the district court's order. *Id.* at 899; *see also id.* at 897 (noting that a district court "decision that remands a case for further fact-finding will rarely have this degree of finality, unless the remand order is limited to

8

ministerial tasks").[1]  Accordingly, this case does not meet even the more liberal

finality standard under § 158(d).

**APPEAL DISMISSED.**

---

[1] The Wilsons rely on *Bonner Mall P'ship v. U.S. Bancorp Mortg. Co.* (*In re Bonner Mall P'ship*), 2 F.3d 899 (9th Cir. 1993), to argue that we may still exercise jurisdiction over the district court's order because the challenged issue is "purely legal."  This argument fails.  As we noted in *Gugliuzza*, *Bonner Mall* is no longer good law on that point, because it "is inconsistent with *Bullard* and our post-*Bullard* precedent."  852 F.3d at 897–98.